■ In the Matter of KAREN GORHAM, Petitioner, v BARBARA BLUM, as Commissioner of the New York State Department of Social Services, et al., Respondents. — Determination of respondent State commissioner, dated December 28, 1979, annulled and the petition granted to the extent of remanding the proceeding to respondent city Department of Social Services for a *de novo* hearing, without costs and without disbursements. Present — Kupferman, J. P., Sullivan, Silverman, Bloom and Fein, JJ. Fein, J., concurs in a memorandum in which Sullivan, J., concurs; Bloom, J., concurs in a separate memorandum; and Kupferman, J. P., and Silverman, J., each dissent in separate memoranda as follows.

Fein, J. (concurring). Petitioner, a recipient of public assistance in the category of aid to dependent children, applied in May, 1979 for readmission to a two-year associate arts degree program in early childhood education at Malcolm-King: Harlem College Extension. Previously enrolled in this program, petitioner had interrupted her studies because of pregnancy in August, 1978. At the time of her application for readmission, she had two children, ages one and three. Petitioner inquired at the local agency concerning reimbursement for child care expenses, explaining that her course of study was designed to lead to employment as a paraprofessional in schools and day care centers. Petitioner was advised by the agency to enter the educational program pending submission of her application for child care expenses and verification of her enrollment. Petitioner did so and meanwhile hired two baby-sitters, who were needed because most of petitioner's courses were at night, when day care centers were not in operation. Petitioner resumed her studies in June, 1979, and completed the course of study in December, 1980. In June, 1981 she was awarded her A.A.S. degree in early childhood education, by which time she had already been working part time as a paraprofessional assistant teacher at a children's day care center in Manhattan. During the course of petitioner's study at Malcolm-King, she allegedly incurred $4,332 in baby-sitter expenses. Petitioner's application was not immediately disapproved. As late as August, 1979 she complied with an agency request for a statement of fees from one of the baby-sitters. In the fall of 1979, as she was about to commence her second semester at Malcolm-King, petitioner applied at the city agency for child care

services for that semester, and at the same time inquired as to the status of her application for reimbursement for those services for the summer term. Only then, in October, 1979, did an agency representative advise petitioner that her application for baby-sitting fees had been denied. Without explanation she was told her program was ineligible because it was a liberal arts course, and that her training to be a paraprofessional was not approved. The agency records indicate she was told that fees could not be authorized for a "person attending college without a vocational or technical certificate as a goal." She was advised to seek a fair hearing. She was not shown the pertinent regulations or advised as to the proofs of eligibilty required. Petitioner requested a fair hearing before respondent State commissioner. At the hearing petitioner introduced evidence of her full-time enrollment at Malcolm-King which was intended to lead to paraprofessional work in educational institutions, specifically as a teacher's aide in a day care center. In the decision after fair hearing, respondent State commissioner affirmed the local agency's determination to deny child care benefits on grounds that petitioner "attends a two-year college course in liberal arts. * * * Inasmuch as [petitioner] is not pursuing a vocational program, and she is not employed, the agency properly denied her request for child care services." Children's day care services are paid for by the local public assistance agency where the applicant is enrolled in a two-year undergraduate college program "with a specific vocational objective" (18 NYCRR 416.2 [a] [2]), such as an undergraduate or community college program "with a specific vocational sequence leading to an associate degree" (18 NYCRR 416.2 [a] [2] [ii]). Respondents maintain that petitioner's course of study was not "an approved program of vocational training" (18 NYCRR 416.2 [a] [2]), but was merely enrollment "in a two-year college in a liberal arts course" with no specific vocational goal. The evidence does not support this conclusion. Deference must be accorded to the construction given statutes and regulations by the agencies responsible for their administration. However, such construction must be supported by substantial evidence (*Matter of Davis v Blum,* 67 AD2d 1105). Here, there was no evidentiary basis for denying petitioner's application. The evidence at the hearing showed that petitioner's program at Malcolm-King, the A.A.S. — Early Childhood Education program, is a two-year undergraduate program leading to an associate degree. The testimony of petitioner and the letter of Millie King, a guidance counselor at Malcolm-King, indicated that the program is designed to prepare its participants for employment as paraprofessionals in educational institutions. There was no evidence to the contrary and no explanation by the State commissioner or the agency as to the basis for their conclusions. In the face of evidence that petitioner's course of study was not merely some academic exercise, but rather was designed with a vocational goal in mind (which was in fact fulfilled following completion of study), respondents choose to ignore the evidence and merely rely upon their general authority to administer these programs under the regulations. While the distinction between academic and vocational courses of study is undoubtedly for respondents' determination, there still must be some rational basis for their interpretation of the regulation (*Matter of Rogers v Berger,* 57 AD2d 722). In the face of the evidence that petitioner's course of study was vocationally oriented, respondents should at a minimum indicate some evidence to the contrary before denying the application, especially where the agency failed to notify petitioner of its disapproval until she was well into her second semester (see *Matter of Kirschner v Berger,* 51 AD2d 549, affd 42 NY2d 970). The dissent by Silverman, J., asserts that the fair hearing was based upon substantial evidence, but points to nothing other than a list of some of the courses ascribed to a liberal arts program, such as American government, comparative civilization,

English composition, mathematics, biology and history. No reason appears why a program of vocational training should eschew such courses. Overlooked are such full-credit courses in petitioner's curriculum as general psychology, infancy/early childhood, seminar in urban education, and method: early childhood, to say nothing of the correspondence from petitioner's counselor indicating that the goal of petitioner's course of study is a degree in early childhood as preparation for paraprofessional work in educational institutions. The State commissioner's decision is conclusory. It scrupulously avoids any specific references to evidence in the record, asserting only that petitioner "is enrolled in a two-year college in a liberal arts course" and "is not pursuing a vocational program". The fact that petitioner did obtain the employment for which she was trained, immediately upon completion of her course of study, certainly should have alerted respondents to the vocational nature of her training (cf. *Matter of Mabb v Toia*, 64 AD2d 831). The Silverman dissent seems to view this as a coincidence, implying that petitioner could have obtained such employment without this formal education. While debatable, that is not the issue before us. The record before respondent State commissioner was too sparse to support a decision that petitioner was not enrolled in a course of study with a vocationally oriented goal. The decision after fair hearing was wholly conclusory, citing no evidence in the agency's favor. Further, it is evident that petitioner, who appeared at the hearing without benefit of counsel, was denied notice of the basis of the denial of her application, and thus was deprived of an adequate opportunity to prepare and develop an argument supporting her eligibility. It may well be desirable that expert testimony be utilized by petitioner if so advised. In view of the sparse record and the failure of respondent State commissioner to make findings and conclusions adequate for review, the proceeding should be remanded for a *de novo* fair hearing. This will afford petitioner an opportunity to make a complete and full record and permit the local agency to develop its objections to petitioner's course of study. The State commissioner will be enabled to render a decision after fair hearing adequate for review on the issue of whether petitioner's course of educational training comports with the regulatory requirements. The decision of the State Commissioner of Social Services after fair hearing, dated December 28, 1979, affirming determination of New York City Department of Social Services denying petitioner's claim for payment of child care (baby-sitter) expenses should be annulled, on the law, and the petition granted to the extent of remanding the proceeding to the Department of Social Services for a *de novo* hearing, without costs.

Bloom, J. (concurring). While I agree with the result reached by my brother Fein I do so only because petitioner was not notified of the reason for the rejection of her claim. Accordingly, she was unprepared to meet the objection raised by respondent, although she did present a letter from one of the supervisors at the college of her attendance attesting to the fact that the course of study pursued by her would qualify her to engage in paraprofessional employment in early childhood education. Since petitioner was unaware of the claim she would be required to meet at the fair hearing, it can scarcely be called a "fair hearing". In these circumstances I agree that a *de novo* fair hearing is required.

Kupferman, J. P. (dissenting). The determination of the State Commissioner of Social Services should be confirmed. The petitioner is to be commended for her success in attaining the skills necessary to be a paraprofessional assistant teacher at a children's day care center. However, the program which provided for assistance was channeled toward vocational training. I cannot say that the interpretation of the commissioner denying the baby-sitting expenses for what was basically a liberal arts program was in error.

Silverman, J. (dissenting). I would confirm the determination of the State Commissioner of Social Services affirming the denial of allowance of payment for baby-sitters while petitioner was attending courses at Malcolm-King: Harlem College Extension. Petitioner and her two children are the recipients of aid in the category of aid to dependent children. The relevant regulation (18 NYCRR 416.2 [a] [2]) permits an allowance for day care for children while the parent is participating in a program of studies only if it is "an approved program of vocational training * * * which, for purposes of this section, includes enrollment in a two year undergraduate college program with a specific vocational objective. Under this requirement day care services shall be authorized only for the following training programs: * * * (ii) those undergraduate or community college programs with a specific vocational sequence leading to an associate degree or certificate of completion within a determined time frame which shall not exceed 30 consecutive calendar months". Concededly the program the petitioner was pursuing was not "approved." The determination of the agencies not to approve the program for the purposes of the regulation was not arbitrary or capricious. The program was required to be a program "of vocational training" with a "specific vocational objective," a "specific vocational sequence." The administrative agency has a range of latitude as to the proper meaning and application of these definitions and as to what kind of program meets the requirement of the regulation. "It is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld." (*Matter of Howard v Wyman*, 28 NY2d 434, 438.) The commissioner's interpretation of "specific vocational objective" and "specific vocational sequence" was not irrational or unreasonable. The commissioner's determination was based on substantial evidence. The record contained evidence about the nature of petitioner's program, the degree to be awarded, the courses that petitioner was taking, and a letter from a "counselor" stating something about the college and that after graduation petitioner would "be prepared for paraprofessional work in educational institutions." The commissioner decided that such a program did not come within the requirements of the regulation. Nor were the actions of the agencies procedurally unfair to petitioner. As early as October 3, 1979 (before she had incurred an additional three semesters of baby-sitting liability) petitioner was explicitly told that the program was not approved. She was told that she would be responsible for the baby-sitting expenses from her educational stipend and that the agency would allow for this in computing her available resources to reduce her public assistance needs.* The city agency not having any success in getting petitioner to accept nonapproval, petitioner was advised to make a fair hearing application, which she did. Petitioner was told what the problem was. According to the city agency's record, she was told on October 3, 1979 that the agency could not authorize baby-sitting fees for a person attending college without a vocational or technical certificate as a goal. Her own version was that at that time she was told, presumably as an example, "if I'm in school, then I'm supposed to be in typing. If I was a man, then I would be an auto mechanic." She was given an opportunity to present evidence at the fair hearing, and she did present evidence at the fair hearing on this precise question, to wit, the evidence referred to above. Before the hearing, the city agency sent her copies of all the documents to be presented at the fair hearing. I do not think the agency was under a duty to tell petitioner to look for more evidence that might sustain a finding that her program of studies met the regulations when the nature of that program was already clear and there was no reason to believe that any

---

* Can it be that the dispute is only as to which public budget shall ultimately bear this expense, i.e., child care or other form of public aid?

evidence existed that would show the nature of the program to be something different from what it apparently was. And indeed, the only additional evidence that has been submitted to the court by petitioner, beyond what was submitted at the fair hearing — particularly a list of the courses that she studied before she interrupted her studies for marriage and pregnancy — if anything, only strengthens the agency's determination, the courses obviously not being vocational, most of them being such courses as American government, comparative civilization, English composition, mathematics, biology and history. The record and briefs before us indicate that petitioner obtained paraprofessional employment as an assistant teacher five months before she earned her degree, thus perhaps casting further doubt on the specific relationship between degree and job. It is, after all, the State and city Departments of Social Services and not the courts which have responsibility for administration of the State's public assistance program. I do not think there has been such a gross departure from the proper administration of the program as to warrant judicial interference in this case. Finally, I note the extraordinary fact that petitioner has been fortunate enough to be able to find baby-sitters who are willing to render services without receiving a penny of payment for three semesters after the agency said it would not pay them, in the apparent hope that the agency would be overruled. That, however, is a matter which will presumably be considered by the agency, if and when it becomes necessary to determine the amount of an allowance for baby-sitting services.